136 N.J. Super. 520 (1975)
347 A.2d 20
SPIN CO., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
MARYLAND CASUALTY COMPANY, NEW JERSEY HIGHWAY AUTHORITY, SPINIELLO CONSTRUCTION CO., COURNELL HAWKINS AND THE GEORGE H. MILLER CO., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 14, 1975.
*521 Mr. Amedeo C. Jacovino for plaintiff (Messrs. Friedman & D'Allesandro, attorneys).
Mr. Richard B. Livingston for defendant Authority (Messrs. Braff, Litvak, Ertag, Wortmann & Harris, attorneys).
*522 Mr. Raymond J. Fleming for defendants, Maryland Casualty Company and George H. Miller Co. (Messrs. Feuerstein, Sachs and Maitlin, attorneys).
Mr. Ralph B. Sussman, attorney for defendants, Spiniello Construction Company and Cournell Hawkins.
LOFTUS, J.C.C. Temporarily Assigned.
This is a negligence suit brought by plaintiff Spin Co., a New Jersey corporation, the owner of a backhoe which was allegedly damaged in an accident on March 30, 1973 in Clifton, New Jersey, on Route 3 when the boom of the backhoe allegedly hit the overpass of the Garden State Parkway while it was being transported on a tractor-trailer. Plaintiff seeks recovery against defendants Maryland Casualty Co., its insurer; George H. Miller Co., the insurance sales agent; Spiniello Construction Co., an alleged bailee who had custody of the property at the time of the accident; Cournell Hawkins, the alleged bailee's agent, and the New Jersey Highway Authority, the state agency responsible for the supervision and administration of the Garden State Parkway.
Defendant New Jersey Highway Authority has moved for summary judgment dismissing the complaint and all counterclaims. In support thereof it urges that N.J.S.A. 59:4-4, 5 and 6 require the granting of such motion.
Plaintiff alleges that defendant New Jersey Highway Authority is negligent under N.J.S.A. 59:4-2 and N.J.S.A. 59:4-4 because the injury was proximately caused by its failure to provide an emergency signal, sign, marking or other device necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to and would not have been anticipated by a person exercising due care. Under N.J.S.A. 59:4-5 a public entity is not liable for an injury resulting from the failure to provide ordinary traffic signals, signs, markings or other similar devices. Also, under N.J.S.A. 59:4-6 a public entity is not liable for injury caused by the *523 plan or design of a public property where such design or plan has been approved in advance of the construction by the authorized public agency in conformity with standards previously approved.
Although the complaint alleged in count 2 that defendant New Jersey Highway Authority failed to comply with N.J.S.A. 59:4-6, plaintiff does not rely thereon and in fact has chosen to rely upon N.J.S.A. 59:4-4, the failure to provide an emergency warning device. However, it should be noted that the Authority has provided the court with a certification that the bridge in question was erected in accordance with the minimum clearance standards of the State Highway Department, 14 feet 6 inches. Therefore, the facts indicate that there is no genuine issue of fact concerning the question that the Highway Department is immune from suit as a result of the plan or design under N.J.S.A. 59:4-6.
The issue that remains with regard to defendant New Jersey Highway Authority is whether the failure to post the height of a bridge is a "failure to provide an emergency warning signal, sign, marking or device" under N.J.S.A. 59:4-4, or a failure to provide an ordinary traffic signal, sign, marking or device under N.J.S.A. 59:4-5. The task that this court must perform is primarily one of statutory construction and, as such, is purely a question of law.
The definitional section of the New Jersey Tort Claims Act does not set forth any definition of either "emergency" or "ordinary" traffic signal, sign, marking or device. N.J.S.A. 59:4-1. Therefore, under N.J.S.A. 1:1-1, the construction of these words within the statute must be given their generally accepted meaning according to the approved usage of the language. As the New Jersey Supreme Court said in Scatuorchio v. Jersey City Incinerator Auth., 14 N.J. 72 (1953), a word as used in a statute need not always be construed to have the precise meaning accorded to it by lexicographers. Nevertheless, words and phrases and statutes are to be given their generally accepted *524 meaning unless inconsistent with the manifest intent of the Legislature or unless a different meaning is expressly indicated. N.J.S.A. 1:1-1; Grogan v. DeSapio, 11 N.J. 308, 323 (1952). In the absence of an explicit indication of a special meaning, as is the case here, words of a statute are to be given their ordinary and well-understood meaning. Fuschetti v. Bierman, 128 N.J. Super. 290 (Law Div. 1974).
What is meant by "emergency" under N.J.S.A. 59:4-4? The general rules of statutory construction must be applied. In connection therewith it is proper for the court to examine other decisional law defining a particular word in previous cases as well as to consider the legislative history with regard to the specific intent of the Legislature in including such word in the statute.
The courts of this State have on many occasions defined the word "emergency," although not necessarily in the context of traffic cases. Carlson v. Hannah, 6 N.J. 202, 214 (1951), stated that an emergency was "a sudden or unexpected occurrence or condition calling for immediate action." See also, Elizabeth Bd. of Ed. v. Elizabeth, 13 N.J. 589, 593 (1953), and Frank v. Jersey City Bd. of Ed., 90 N.J.L. 273, 278 (E. & A. 1917). The legal definition and the more general definition of the word "emergency," as respectively found in Black's Law Dictionary (4 ed. 1957), 615 and Webster's Third New International Dictionary of the English Language, Unabridged (1966), 741, emphasize the sudden, unexpected, emergent nature of a situation that could be defined as an emergency. In contrast, "ordinary" has been defined as regular, usual, normal, common, often reoccurring and not characterized by peculiar or unusual circumstances. Black's Law Dictionary at 1249; Webster's Third New International Dictionary of the English Language, Unabridged, at 1589.
With regard to the legislative intent in enacting N.J.S.A. 59:4-4 and 5, the comments to the applicable sections indicate that the Legislature intended to codify pre-existing case law on the issue of a public entity's liability *525 in the conduct of its governmental functions. The pre-existing case law on this point was that a public entity would be liable for its failure to respond to an emergent situation that held a high degree of risk for the public, Bergen v. Koppenal, 52 N.J. 478 (1968), but that such public entity would not be liable for its decision whether or not to post a traffic signal, Hoy v. Cappelli, 48 N.J. 81 (1966).
A review of the pleadings, affidavits, briefs and all other documents submitted in this case does not indicate that there was a sudden or unexpected occurrence or condition imposing a duty upon defendant New Jersey Highway Authority under N.J.S.A. 59:4-4 to post an emergency traffic sign because no emergency situation existed.
Therefore, in accordance with R. 4:46-2, because no genuine issue of material fact is presented as to the liability of defendant Authority, I hereby find as a matter of law, after having reviewed all of the pleadings, affidavits and documents submitted herewith, that it is immune from suit.
Therefore, the motion for summary judgment dismissing the complaint against defendant New Jersey Highway Authority and all cross-claims against such defendant is hereby granted.