157 N.J. Super. 518 (1978)
385 A.2d 260
THOMAS JOHNSON AND CHERYL JOHNSON, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF SOUTHAMPTON, COUNTY OF BURLINGTON, DEFENDANT-RESPONDENT, AND STEVEN P. REAMER, COUNTY OF BURLINGTON AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1978.
Decided March 20, 1978.
*519 Before Judges FRITZ, BOTTER and ARD.
Mr. Samuel Mandel argued the cause for the appellants (Messrs. Worth, Garber & Kasten, attorneys).
Mr. Robert J. Partlow argued the cause for the respondent Township of Southampton (Messrs. Parker, McCay and Criscuolo, attorneys).
The opinion of the court was delivered by ARD, J.A.D.
The sole question involved in this appeal is whether the Township of Southampton is entitled to immunity from plaintiffs' claims by virtue of our Tort Claims Act, N.J.S.A. 59:1-1 et seq.
Plaintiff Thomas Johnson instituted an action against the Township of Southampton, Burlington County, New Jersey, and Steven P. Reamer for serious personal injuries arising out of a motorcycle accident which occurred on October 20, 1972 at the intersection of Retreat Road and Burr's Mill Road in the Township of Southampton, Burlington County. His wife sued per quod.
Johnson was a passenger on the motorcycle being driven by defendant Steven P. Reamer. It was approximately 8:20 P.M., and it was dark. They were proceeding at approximately 35 miles an hour in a general easterly direction on Retreat Road. Retreat Road was described by plaintiff as a blacktop highway which was two lanes wide. It connected with Burr's Mill Road, which runs in a north-south direction at right angles to it forming a "T" intersection. Burr's Mill Road is the top of the "T" and Retreat Road the stem. At the junction of the "T" Retreat Road forms a "Y" permitting traffic to go left or right entering into Burr's Mill Road. The intersection is approximated in this fashion: &utrif;. Within the upper arms of the &utrif; is a triangular grassy plot.
Reamer, apparently unfamiliar with the area, unknowingly approached Burr's Mill Road and followed the road as it curved to the right entering the intersection but failed to *520 make the right turn at Burr's Mill Road and continued across Burr's Mill Road crashing into a guardrail on the easterly side of the road, causing both occupants to be thrown from the motorcycle.
After instituting suit it was ascertained that neither the County nor the State had jurisdiction or control of the roads in question and each was granted summary judgment. Plaintiffs also elected to voluntarily dismiss their complaint as to defendant Steven P. Reamer.
The Township of Southampton moved for summary judgment asserting that plaintiffs' claim was barred by the immunity set forth in N.J.S.A. 59:4-5. The trial judge agreed and entered judgment in behalf of the township. This appeal followed.
At the outset it is essential to reiterate the legislative declaration concerning the application of the New Jersey Tort Claims Act. N.J.S.A. 59:1-2 provides in pertinent part as follows:
* * * Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.
This policy is further enunciated in N.J.S.A. 59:2-1 which provides:
a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
b. Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person.
The authority to hold a public entity liable is found in N.J.S.A. 59:4-2:
*521 A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
A "dangerous condition" is defined to mean "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).
Specific immunity is found in N.J.S.A. 59:4-5 which provides:
Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices.
N.J.S.A. 59:4-6 deals with plan or design immunity and reads as follows:
a. Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.
Inasmuch as the matter is before us on appeal from a grant of summary judgment, we accept as true all facts appearing *522 in the record and reasonable inferences drawn therefrom in the light most favorable to plaintiffs. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). However, we reject plaintiffs' claim that the absence of signs and traffic controls on Retreat Road at or near its intersection with Burr's Mill Road caused the operator of the motorcycle to feel a "false sense of security." The mental processes of the operator are not found in the record, and there is no basis to reasonably infer the aforementioned statement. In any case, even if that inference were drawn, it would not change the result.
Plaintiffs predicate the township's liability on the following assertions:
1. The negligent failure of the township to maintain the property thereby allowing a dangerous condition to exist.
2. Having actual and constructive notice of the dangerous condition, the township failed to provide warning signals of such condition to provide for the safe movement of traffic * * *. Failure to design the road properly. Failure to include in such design adequate and proper warnings, ordinary and extraordinary traffic signals which were prudent and proper at the time the design was created for the control and flow of traffic.
3. Having elected not to provide signs or traffic controls, the municipality is guilty for its negligent failure to redesign, alter, change or maintain the highway so that such signs or controls need not be necessary.
Although much of plaintiffs' brief is concerned with an analysis of case law prior to New Jersey Tort Claims Act, we gather that plaintiffs' basic contention is that the defendant township was guilty of negligence in failing to provide adequate warning signs or devices to guide approaching motorists. In addition, there was an assertion that the trees and brush which bordered the road as well as the grassy triangle at the "Y" created a "dangerous condition."
We disagree with plaintiffs' contentions. N.J.S.A. 59:4-5 provides the municipality with immunity from liability for failure "to provide ordinary traffic signals, signs, markings or *523 other similar devices." As stated in Aebi v. Monmouth Cty. Highway Dep't, 148 N.J. Super. 430 (App. Div. 1977):
* * * The determination as to the advisability or necessity of a traffic sign or warning device at any particular place requires the exercise of discretion, and hence N.J.S.A. 59:4-5 simply specifies one particular type of discretionary activity to which immunity attaches. * * * [at 433]
The road in question was unimpeded. Like any road or highway, there were obstructions next to the right-of-way which interfered with compass range visibility but the roadway itself was unobstructed. There was nothing in or on the roads in question which constituted a dangerous condition.
Plaintiffs' contention that the road and intersection constituted a "dangerous condition" is without merit. While it is true that N.J.S.A. 59:4-4 renders a municipality liable for failing to provide emergency signals or devices to warn of a dangerous condition which endangers vehicular traffic, it has no application in this case. As stated in the comment to N.J.S.A. 59:4-4:
This provision declares that liability may exist for the failure on the part of a public entity to provide an emergency warning signal or device when a condition exists constituting a "trap" to a person using a street or highway with due care. It should be noted, however, that a public entity's liability for failure to provide such signals or devices must be measured against the standard of whether the entity's action or inaction was "palpably unreasonable." Bergen v. Koppenal, 52 N.J. 478, 480, 246 A.2d 442 (1968).
There is no allegation made by plaintiffs that the roads in question were obstructed or that the right-of-way contained a dangerous condition. The limited ability to make observations on either side of the road caused by trees and vegetation simply served as a warning that due care must be maintained. The road conditions which presented themselves to the plaintiff passenger and his operator did not constitute a "trap."
*524 Prior to the Tort Claims Act our courts held that a governmental determination to install or not to install traffic control devices at an unregulated intersection cannot provide a basis for a cause of action. Hoy v. Capelli, 48 N.J. 81 (1966). Furthermore, in Catto v. Schnepp, 121 N.J. Super. 506 (App. Div. 1972), aff'd 62 N.J. 20 (1972), the court answered an allegation that a reduced speed limit should have been posted at a sharp, substandard curve by saying:
* * * No independent liability can attach for failure to post a speed limit or other warning sign or for failure to maintain the roadway in a safe condition since these activities also are cloaked with immunity as resting within the discretionary judgment of the governing authority. Fitzgerald v. Palmer, 47 N.J. 106 (1966). [121 N.J. Super. at 511]
N.J.S.A. 59:4-4 does not have application to the facts of this case. See Aebi v. Monmouth Cty. Highway Dept., supra; Spin Co. v. Maryland Cas. Co., 136 N.J. Super. 520 (Law Div. 1975). Furthermore, we are satisfied that our holding does not fly in the face of McGowan v. Eatontown, 151 N.J. Super. 440 (App. Div. 1977). In McGowan the court was dealing with an alleged negligent construction of a driveway on the roadside property of a restaurant causing a runoff of large quantities of water on to the adjoining State highway. The allegation was that water accumulated as a result of improper drainage and formed ice, causing a dangerous, emergent condition. In reversing the summary judgment entered in behalf of the public entities, the court held (at 449) that plaintiff "is entitled to attempt to show the condition occurred at least in part from other non-immunized causes, such as negligent construction in contrast to improper design, or solely climatological conditions, in his effort to establish liability under N.J.S.A. 59:4-2." The facts of McGowan are inapposite.
Finally, plaintiffs claim a jury question is present by virtue of their allegation that the township is guilty of design *525 liability. The short answer to this is found in McGowan v. Eatontown, supra:
* * * As we indicated heretofore, if the alleged dangerous condition on the roadway is a result of the plan or design of the roadway so as to be covered by N.J.S.A. 59:4-6, the State is immune, as it would be if the condition was solely the result of the weather under N.J.S.A. 59:4-7. * * * [at 449]
In summary, we find plaintiffs' claim against the public entity pursuant to N.J.S.A. 59:4-2 to be barred by N.J.S.A. 59:4-5 and N.J.S.A. 59:4-6. The natural obstructions to observations made from the roadway caused by trees, underbrush and grass do not constitute the type of "dangerous condition which endangered the safe movement of traffic" requiring emergency signals, signs or markings as provided in N.J.S.A. 59:4-4.
Affirmed.