247 N.J. Super. 62 (1991)
588 A.2d 854
GEORGE E. SMITH, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT, AND LOUIE MONROE AND JOSEPH'S EXPRESS COMPANY, INC., DEFENDANTS.
LISA FERRARA, AN INCOMPETENT BY AND THROUGH HER GUARDIAN AD LITEM, JOANNE GALYEAN, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT, AND GEORGE E. SMITH, LOUIE MONROE, AND JOSEPH'S EXPRESS CO., INC. DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 1991.
Decided April 1, 1991.
*63 Before Judges J.H. COLEMAN and ASHBEY.
Gary D. Ginsberg argued the cause for appellant George E. Smith (Friedman, Bafundo, Ginsberg & Porter, attorneys; Gary D. Ginsberg on the letter brief).
William J. Schmidt argued the cause for appellant Lisa Ferrara (White and Williams, attorneys; William J. Schmidt on the brief).
Richard M. Orr, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel; Richard M. Orr on the brief).
The opinion of the court was delivered by J.H. COLEMAN, P.J.A.D.
*64 This is an appeal from a summary judgment holding that the New Jersey Department of Transportation (DOT) has immunity under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. (Act), for the claims alleged against it in the two complaints respecting traffic signs to warn motorists of a low overpass. We agree and affirm.
On June 30, 1986, plaintiff Lisa Ferrara was a passenger in a motor vehicle operated by George E. Smith when the Smith vehicle collided with the rear of a tractor-trailer being operated by Louie Monroe. Shortly before the collision, Monroe had travelled westerly on State Route 30 (Admiral Wilson Boulevard) to the Baird Boulevard overpass. The underpass was marked 13 feet 5 inches and Monroe's trailer was 13 feet 6 inches. Realizing his trailer was higher than the underpass, he stopped in lane two of the four-lane highway. He decided to back-up to a point where he could exit on to Somerset Avenue. After backing up and while waiting in lane two for traffic in lane one to permit him to exit to the right, Monroe heard a loud noise from Smith's vehicle being driven into and beneath the rear of the tractor-trailer. This was a tragic accident in which Smith and Ferrara were severely injured; neither has any present recollection of what happened.
Smith and Ferrara filed separate complaints which were consolidated. They have alleged that the DOT created a dangerous condition on its property, Route 30 West, by failing to maintain and place a ground-mounted sign at a location which would properly alert tractor-trailer drivers of the low overpass within a sufficient distance before the last exit prior to the overpass. They contend, based on evidence from Monroe, that Monroe did not see a ground-mounted sign on the day of the accident. Monroe has also stated that he did not see a ground-mounted sign when he returned to the area two or three days after the accident. They further contend that notwithstanding the DOT's evidence that a ground-mounted sign was located 55 *65 to 70 feet from the last exit, that sign did not properly warn tractor-trailer drivers in time to be able to make a detour around the underpass. To substantiate that theory, plaintiffs presented a report from an expert who stated that the sign should have been 500 feet from the last exit, which was Somerset Avenue.[1] Thus plaintiffs contend they established a prima facie case under N.J.S.A. 59:4-2 and N.J.S.A. 59:4-4 because a dangerous condition was created by the DOT on its property which was palpably unreasonable.
To establish a prima facie case within the contemplation of N.J.S.A. 59:4-2, plaintiffs must demonstrate that (1) the public property was in a dangerous condition at the time of the accident, (2) the condition proximately caused the accident and damages, (3) the condition created a reasonably foreseeable risk of the kind of injury that occurred, (4) either the condition was wrongfully created by an employee of the entity or the entity had actual or constructive notice long enough to have taken measures to protect against it, and (5) the action or inaction of the public entity in protecting against the condition was palpably unreasonable. Kolitch v. Lindedahl, 100 N.J. 485, 492-93, 497 A.2d 183 (1985); Brown v. Brown, 86 N.J. 565, 575, 432 A.2d 493 (1981). We do not, however, address whether the elements of a prima facie case were established because we are persuaded that immunity under the Act prevails over plaintiffs' claims in any event.
Inasmuch as the matter is before us on an appeal from a grant of summary judgment, we accept as true plaintiffs assertion that a prima facie case of liability can be established. Nonetheless, plaintiffs are not entitled to have a jury deliberate respecting liability if the public entity is entitled to immunity. The Act, N.J.S.A. 59:1-1 et seq.; Rochinsky v. State of N.J., *66 Dep't of Transp., 110 N.J. 399, 413-414, 541 A.2d 1029 (1988). Immunity under the Act predominates over liability and the DOT contends it enjoys immunity under N.J.S.A. 59:4-5.
When granting summary judgment dismissing both complaints against the DOT, the judge stated:
My reading of N.J.S.A. 59:4-4, 5 and 6 indicates to me that the State is entitled to the immunity it seeks in the facts of this case. First, that it seems to me that if the plaintiffs are talking about the bridge itself and the fact of its construction being the height that it is, that liability is immune under 4-6 for plan or design or immunity.
If the plaintiffs are talking about the lack of an appropriate warning traffic signal or sign, then that has the immunity of 59:4-5. 59:4-2 is only pertinent if there is an area that isn't already given immunity by other sections, so 59:4-2 is of no help to the Court if the immunities are there under 4-5 and 4-6.
So we're left with at best, 4-4. And 4-4, as I read it and as I understand the Supreme Court opinion in Kolitch [Kolitch v. Lindedahl, 100 N.J. 485, 497 A.2d 183 (1985)] and Judge Loftus' opinion in Spin [Spin Co. v. Maryland Cas. Co., 136 N.J. Super. 520, 347 A.2d 20 (Law Div. 1975)] deals only with those situations where a sudden or emergent condition presents itself and the State fails to give adequate warning of that dangerous condition. The definitions that Judge Loftus went through to determine what emergency meant, where she quotes from the Carlson [Carlson v. Hannah, 6 N.J. 202, 78 A.2d 83 (1951)] case, as a sudden or unexpected occurrence or condition calling for immediate action, and where she quotes from Webster's Dictionary definition dealing with the sudden unexpected emergent nature of a situation, that definition of emergency and that interpretation of emergency in 59:4-4 modifying the entire section in effect is made more clear in the Kolitch case where the Supreme Court dealing with  first quoting from the prior Appellate Division decision in Aebi, [Aebi v. Monmouth Cty. Highway Dep't, 148 N.J. Super. 430, 372 A.2d 1130 (App.Div. 1977)] which dealt with the narrowed roadway into a bridge, and then the facts of Kolitch which dealt with a sagged curve, in both cases the court did not construe them as emergent conditions under 4-4. In which case the design immunity of 4-6 applied.
So it's difficult reasoning, but it seems to me these cases are telling me that 4-4 only pertains to emergent situations, not situations that are long-standing are there, and if it only pertains to emergent situations then we're back to the plan design immunity or the sign immunity, both of which give the State immunity.
So because I can't find a basis under the Tort Claims Act for liability on the State, the motions by the State for summary judgment are granted.
On this appeal, Smith and Ferrara contend that the plan or design immunity provided under N.J.S.A. 59:4-6 is not applicable because they do not allege that the DOT is liable for any improper planning or designing of the underpass. Based on *67 that concession, we find no occasion to discuss N.J.S.A. 59:4-6 and the judge's reference to the plan and design immunity was harmless.
Smith and Ferrara argue further that the DOT created and/or maintained a dangerous condition on its public property (Route 30 West) by not having a ground-mounted sign posted at all, or if posted, within a sufficient distance before the last exit to warn of the approaching underpass. They argue that once the DOT decided to place signs to warn the public of the height of the underpass, the DOT was required to maintain the signs to ensure that the posted warnings reasonably alerted motorists approaching the underpass. Plaintiffs rely on Shuttleworth v. Conti Constr. Co., Inc., 193 N.J. Super. 469, 475 A.2d 48 (App.Div. 1984), to support their contention that it was the DOT's maintenance responsibility to take steps necessary to ensure that once a warning sign was posted, it was replaced if later knocked down or removed. We reject this contention.
Shuttleworth held that when a public entity exercises its discretion and places a stop sign at an intersection, it may be liable if it fails to trim its trees to prevent obstruction of the stop sign. We found no immunity under N.J.S.A. 59:4-5 because the case related to the manner in which the county maintained its stop sign respecting the bush that obscured it. Id. at 473-474, 475 A.2d 48. Shuttleworth did not deal with the question of maintaining the stop sign where it was posted or whether the stop sign was placed in a proper location initially. It dealt only with the need to trim bushes on the public entity's property which partially obscured the sign.
The decisions in Johnson v. Township of Southampton, 157 N.J. Super. 518, 385 A.2d 260 (App.Div.), certif. denied, 77 N.J. 485, 391 A.2d 499 (1978) and Aebi v. Monmouth Cty. Hwy. Dep't, 148 N.J. Super. 430, 372 A.2d 1130 (App.Div. 1977), are more on point. In Johnson, the operator of a motorcycle contended that the public entity was liable under N.J.S.A. 59:4-2 for failing to post signs and traffic controls to adequately *68 warn approaching motorists of a "T" intersection which caused the operator of a motorcycle to feel a false sense of security. 157 N.J. Super. at 522, 385 A.2d 260. It was also contended that overhanging trees and brush which bordered the roadway at the "T" or "Y" intersection created a dangerous condition. We relied on Aebi and concluded that the public entity enjoyed immunity under N.J.S.A. 59:4-5 and that no emergency warning signal or sign was required pursuant to N.J.S.A. 59:4-4 because there was no obstruction in the roadway.
In Aebi, the operator of a motor vehicle sought to impose liability upon a public entity for its ownership of a bridge that was considerably narrower than the roadway on which the bridge was located. The driver of one vehicle, who was apparently unaware that the bridge was narrower than the roadway, struck a guard rail and deflected into Aebi's lane of traffic thereby causing the two vehicles to collide. Aebi sought to predicate liability upon the county's ownership of the bridge based upon "the absence of signs and other devices warning motorists the width of the roadway was being suddenly reduced to the width of the bridge." Aebi, supra, 148 N.J. Super. at 432, 372 A.2d 1130. Even though it is arguable that the bridge partially obstructed the roadway, we held that the public entity enjoyed immunity pursuant to N.J.S.A. 59:4-5 for failing to provide ordinary traffic signs. Id. at 433, 372 A.2d 1130. We also held that the emergency warning provisions of N.J.S.A. 59:4-4 did not apply apparently because the bridge was a long standing condition and we cited Spin v. Maryland Cas. Co., 136 N.J. Super. 520, 347 A.2d 20 (Law Div. 1975), with approval. Both Johnson and Aebi were cited with approval in Kolitch, supra, 100 N.J. at 496-497, 497 A.2d 183.
In the present case, we are dealing with the placement of a ground-mounted sign and its alleged absence. If it existed on the day of the accident, its placement creates no liability. Kolitch v. Lindedahl, supra, 100 N.J. at 495, 497 A.2d 183, *69 instructs that "the State cannot be subjected to liability for the posting of a sign so long as the sign itself does not misinform the public." This is so because N.J.S.A. 59:4-5 provides that a public entity is not liable "for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices." When a sign is posted that does not misinform the public, that act involves the exercise of discretion. See Aebi v. Monmouth Cty. Highway Dep't, supra, 148 N.J. Super. at 433, 372 A.2d 1130. "Thus, both the decision [to post a sign] and the act of implementation [by posting the sign] are one and same for the purpose of the [traffic sign immunity] statute." Kolitch, supra, 100 N.J. at 496, 497 A.2d 183. It follows therefore that because there is immunity for not posting a sign initially and for where the sign is placed, immunity also exists for not replacing a missing sign. This conclusion is especially compelling where a motorist, such as Monroe, has not seen a ground-mounted sign even if it existed. Viewed in that context, no liability may be visited upon the DOT for not posting a traffic sign. N.J.S.A. 59:4-5.
Plaintiffs also seek to impose liability pursuant to N.J.S.A. 59:4-4. They argue that the low underpass which had less than 13 feet 6 inches of clearance was a dangerous trap for motorists, and the DOT was required to provide "emergency" warnings contemplated by N.J.S.A. 59:4-4. That statute provides:
Subject to section 59:4-2 of this act, a public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.
Plaintiffs contend that if the ground-mounted sign was in place, it was too close to the last exit before the underpass to eliminate the trap. And if there was no ground-mounted sign, they argue that made for an even greater emergency. The thrust of their argument is that an emergency was created for Monroe and other drivers of tractor-trailers which were over 13 *70 feet 5 inches, as well as for other motorists following such tractor-trailers on the westerly stretch of Route 30 from the Somerset Avenue exit to the Baird Boulevard overpass. They allege an emergency existed because once Monroe passed the Somerset Avenue exit, his only choice was to stop his rig on the travelled portion of the highway because the low underpass constituted a complete obstruction of the roadway for such tractor-trailers.
This argument poses a close question. In McGowan v. Borough of Eatontown, 151 N.J. Super. 440, 450, 376 A.2d 1327 (App.Div. 1977), we observed that N.J.S.A. 59:4-4 permits liability subject to N.J.S.A. 59:4-2 for failure to provide "emergency" devices "if they are necessary to warn of a dangerous condition imperiling the safe movement of traffic not apparent to, or capable of anticipation by a person using due care." Where such a condition exists, it constitutes a "trap" to persons otherwise using due care. We also stated in McGowan that where a "trap" exists, it makes no difference whether the emergency consists of a single passing episode or recurs predictably and periodically so long as the public entity is on notice of the likelihood. Ibid. In Johnson v. Township of Southampton, supra, 157 N.J. Super. at 523, 385 A.2d 260, we emphasized the importance of whether the alleged emergent condition obstructed or impeded the movement of vehicular traffic on the roadway itself in examining whether N.J.S.A. 59:4-4 is applicable. Aebi, supra, disallowed a claim under N.J.S.A. 59:4-4 even though the bridge was clearly a partial obstruction of vehicular traffic since the roadway was substantially wider than the bridge.
The decision in Kolitch was acknowledged as being a close one in which only five justices participated and one of those filed a dissenting opinion. 100 N.J. at 498-499, 497 A.2d 183. Kolitch did not involve a dangerous condition on the roadway which impeded or obstructed the movement of motor vehicular traffic. But the Court cited Aebi with approval which did *71 involve at least a partial obstruction of the roadway. We are compelled to follow the logic of Kolitch.
In Kolitch v. Lindedahl, 193 N.J. Super. 540, 546, 475 A.2d 86 (App.Div. 1984), rev'd on other grounds, 100 N.J. 485, 497 A.2d 183 (1985), we held that N.J.S.A. 59:4-4 is "inapplicable to ordinary, continuing traffic conditions for which governmental failure to provide warning signs is shielded by immunity under N.J.S.A. 59:4-5." This holding was affirmed by the Supreme Court when it agreed that "the public entity could not be held liable for failure to provide `emergency signals, signs, markings or other devices' under N.J.S.A. 59:4-4." Id. at 497, 497 A.2d 183. If the vertical sag curve in the road in Kolitch that created a death trap did not require an emergency warning, we perceive no reason why an emergency warning signal or sign should be required in this case. Both the underpass involved here and the vertical sag curve in Kolitch involve longstanding traffic or road conditions.
Beyond that, it would be incongruous indeed to hold that there is immunity for failure to provide ordinary traffic signals under N.J.S.A. 59:4-5 but by simply labeling an ordinary, continuing and longstanding traffic condition[2] "an emergency," liability may be created for failing to provide "emergency signals, signs, markings or other devices." An "emergency" means a sudden and unexpected condition, one that is extraordinary. Rochinsky v. State of N.J., Dep't of Transp., supra, 110 N.J. at 415, 416, 541 A.2d 1029; Kolitch v. Lindedahl, supra, 193 N.J. Super. at 546, 475 A.2d 86; Meta v. Township of Cherry Hill, 152 N.J. Super. 228, 234, 377 A.2d 934 (App.Div. *72 1977); Spin v. Maryland Cas. Co., supra, 136 N.J. Super. at 524, 347 A.2d 20. Consequently, we agree with the trial judge that no emergency existed under N.J.S.A. 59:4-4.
We have considered the other contentions raised and find they are clearly without merit. R. 2:11-3(e)(1)(E). Summary judgment dismissing the complaint is affirmed.
Affirmed.
NOTES
[1] Subsequent to this accident, the DOT has erected a groundmounted sign 500 feet from the Somerset Avenue exit. This evidence, however, would be inadmissible on the issue of negligence. Evid.R. 51; Brown v. Brown, 86 N.J. 565, 580-582, 432 A.2d 493 (1981).
[2] We distinguish the recent case of Weiss v. New Jersey Transit, 245 N.J. Super. 265, 276, 584 A.2d 1359 (App.Div. 1991) respecting a railroad crossing signal. Weiss held that the immunity provided in N.J.S.A. 59:4-5 did not apply to the public entities' unreasonable delays in implementing a discretionary decision of the Commissioner of the DOT to upgrade a railroad crossing warning system. Id. at 275, 584 A.2d 1359. But see Kolitch v. Lindedahl, 100 N.J. at 496, 497 A.2d 183, stating that both the discretionary decision and its implementation enjoy immunity.