**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0317-18T1

ALEXANDER FERRIS, an infant,
by his GUARDIAN AD LITEM,
MELISSA FERRIS, and SEAN
FERRIS and MELISSA FERRIS,
individually,

      Plaintiffs-Appellants,

v.

AIDA BLANCO-ALQUACIL,
AFFINITY CARE OF NEW JERSEY,
HEALTH AND COMFORT HOME
CARE AGENCY,

      Defendants,

and

BOROUGH OF MIDDLESEX,
a Municipal Corporation of New Jersey,

      Defendant-Respondent.

_____

Argued September 16, 2019 – Decided October 17, 2019

Before Judges Messano and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0274-16.

Joseph F. Trinity argued the cause for appellants (Trinity & Farsiou, LLC, attorneys; Joseph F. Trinity, on the briefs).

Alexandra J. Taylor argued the cause for respondent (Camassa Law Firm, PC, attorneys; John Anthony Camassa, of counsel and on the briefs; Alexandra J. Taylor, on the briefs).

PER CURIAM

Plaintiff, then thirteen-years-old, Alexander Ferris, suffered serious injuries when struck by a car driven by defendant Aida Blanco-Alquacil as he crossed the road in a delineated intersection crosswalk in the Borough of Middlesex (Middlesex).[1] His parents filed suit individually and on his behalf, alleging negligence by defendant and further claiming Middlesex maintained a "dangerous condition," specifically "a poorly maintained crosswalk" that "lack[ed] proper and adequate signage" and was "improper[ly]" lit.

Middlesex moved for summary judgment, arguing the intersection was not a dangerous condition under the New Jersey Tort Claims Act (TCA), N.J.S.A.

---

[1] Plaintiff alleged that at the time of the accident, Blanco-Alquacil was "in the course of her employment" with Affinity Healthcare of New Jersey "and/or" Comfort Home Care Agency. We need not discuss the procedural history regarding those two defendants because plaintiff settled the litigation with all three defendants.

59:1-1 to 12-3, specifically N.J.S.A. 59:4-2. It furnished a report from a purported crash reconstruction expert who opined that the crosswalk and intersection were not a dangerous condition, since the crosswalk was clearly marked with a streetlight above.[2] Plaintiff opposed the motion, arguing the intersection did not have an upright crosswalk sign, as did the crosswalks on the same road at intersections before and after. Plaintiff also cross-moved to reopen discovery in order to serve a rebuttal liability expert report and possibly additional medical expert reports.

The judge granted Middlesex summary judgment, concluding the intersection was not a dangerous condition and, based on defendant's deposition testimony, the lack of a sign could not have been a proximate cause of the accident. In her deposition, defendant acknowledged she would "slow down" and be "more careful" upon seeing an upright crosswalk sign. She also testified that she drove the road "twice per day," was going slowly because there were "many businesses" in the area and "a lot of people who walk," and saw the crosswalk lines at the subject intersection. The judge reasoned "[t]he fact that

---

[2] Contrary to the requirements of Rule 2:6-1(a)(1), plaintiff has not included "a statement of all items submitted to the court on the summary judgment motion[.]" The transcript of oral argument on the motion, however, reveals the defense expert report was part of the motion record and is included in the appellate record.

there was no upright sign is moot, because [defendant] testified she was aware of the crosswalk and looked for pedestrians."

The judge partially granted plaintiff's motion to reopen discovery, permitting an extension for additional medical reports but not for a liability expert report. The judge reasoned that a rebuttal expert's report as to Middlesex was unnecessary because of the grant of summary judgment. Plaintiff sought reconsideration. In an oral decision, the judge denied the motion, reasoning that plaintiff provided "nothing . . . to warrant reconsideration of [the court's] prior decision."

Plaintiff appeals. He argues the judge erred in finding, as a matter of law, that the intersection and crosswalk were not a dangerous condition of public property. Citing defendant's deposition testimony, plaintiff argues there was a genuine dispute whether the absence of an upright crosswalk sign at the intersection could have been a proximate cause of the accident, and, therefore, the issue was not "moot." Lastly, plaintiff challenges the order that partially reopened discovery to permit him only to serve an expert's report on medical damages, but not a liability expert's report.[3]

---

[3] Plaintiff's notice of appeal also requests our review of the order denying his motion for reconsideration. However, plaintiff makes no argument in his brief challenging the order. An issue not briefed is waived. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

4                                                          A-0317-18T1

In response, Middlesex argues that the intersection was not a dangerous condition under the TCA. It also cites defendant's deposition testimony, wherein she claimed to reduce speed at all intersections, and, since defendant often drove along this particular road, Middlesex contends the lack of an upright crosswalk sign could not have been a proximate cause of the accident. Additionally, for the first time, Middlesex asserts that N.J.S.A. 59:4-5 specifically immunizes a public entity "for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices." Ibid. Plaintiff responded to this new argument in his reply brief.

We usually will not consider an argument not raised before the trial court. Zaman v. Felton, 219 N.J. 199, 226–27 (2014). However, given the significance of Middlesex's contention and its interrelationship to whether the intersection was a dangerous condition, we asked at oral argument, in an effort to preserve judicial resources and those of the parties, if plaintiff objected to our consideration of the sign immunity under the facts of this case. He does not. We gave the parties the opportunity to file supplemental briefs, which they have now done.

We review the grant of summary judgment de novo, applying the same standard used by the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

That standard mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

[Ibid. (quoting R. 4:46-2(c)).]

We owe no deference to the trial court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).

The general rule is that "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cty. of Essex, 209 N.J. 51, 65 (2012) (Polzo II) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)). A public entity may be liable for injuries caused by a condition on its property if a plaintiff can establish:

[1] the existence of a "dangerous condition," [2] that the condition proximately caused the injury, [3] that it "created a reasonably foreseeable risk of the kind of injury which was incurred," [4] that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and [5] that the entity's conduct was "palpably unreasonable."

[Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2).]

6 A-0317-18T1

"Th[e]se requirements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must fail." Polzo v. Cty. of Essex, 196 N.J. 569, 585 (2008) (Polzo I).

"The [TCA] defines a 'dangerous condition' as 'a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.'" Garrison v. Twp. of Middletown, 154 N.J. 282, 286–87 (1998) (quoting N.J.S.A. 59:4-1(a)). Whether the property presents a dangerous condition, and whether the public entity's conduct was palpably unreasonable, are generally questions of fact. Vincitore, 169 N.J. at 123, 130. Even if liability exists, however, it is trumped by an immunity explicitly provided for by the TCA. See, e.g., Dickson v. Twp. of Hamilton, 400 N.J. Super. 189, 195 (App. Div. 2008) ("When both liability and immunity exist, immunity prevails.") (citing N.J.S.A. 59:2-1).

Plaintiff acknowledges the intersection and crosswalk where the accident occurred did not inherently pose "a substantial risk of injury" when "used with due care[.]" N.J.S.A. 59:4-1(a). The crosswalk was appropriately marked and visible to approaching drivers. Plaintiff contends, however, that a reasonable factfinder could conclude the presence of upright crosswalk signs at other

adjacent intersections on the road transformed this intersection, which lacked a sign, into a dangerous condition under the TCA.

He relies, in large part, on the Court's decision in Civalier by Civalier v. Estate of Trancucci, 138 N.J. 52 (1994). There, the stop sign that regulated the flow of intersection traffic was missing due to vandalism, an apparent "recurring problem" in the municipality that caused the municipality to replace the sign weeks earlier because of a prior incident of vandalism. Id. at 57. One driver "knew that a sign regulated the intersection and he assumed that he had the right of way." Id. at 56–57. Without the benefit of the stop sign, the other driver proceeded into the intersection, resulting in a horrible accident that claimed three lives and injured two others. Id. at 57.

The Court analyzed the tension between the TCA's sign immunity, and another provision which "imposes liability for failure to provide warning signs when 'necessary to warn of a dangerous condition which endanger[s] the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.'" Id. at 63 (alteration in original) (quoting N.J.S.A. 59:4-4). As the Court framed the issue: "The question is whether the absence of a traffic signal that had been at the intersection 'was actively deceptive' or 'lulled [at least one of the drivers] into a false sense of security,' thus constituting a 'trap' under N.J.S.A. 59:4-4." Id. at

64 (alteration in original) (quoting Lytle v. City of Newark, 166 N.J. Super. 191,

196 (Law Div. 1979)).  The Court held:

> [I]n this context of previously-posted traffic signals, that our "trap liability" provision, N.J.S.A. 59:4-4, limits recovery to those plaintiffs injured by motorists' reliance on the proper functioning or presence of a previously posted signal to their detriment.  We limit the imposition of liability in that way because in the absence of reliance the public entity and the public are in the same position as they were before the entity posted the sign.  In that setting of non-reliance, as we held in Weiss [v. New Jersey Transit], 128 N.J. 376 [(1992)], public entities have the same immunity for failure to implement promptly a decision to post a sign as they have for their initial discretionary decision not to post a sign at all.  However, the element of a driver's reliance on the sign's presence may create a dangerous condition of property for purposes of N.J.S.A. 59:4-4 when the signal is malfunctioning or absent.  Therefore, we hold that a public entity is liable for its failure to replace a traffic sign only when the motorist's reliance on the previous presence of the sign caused the claimant's injuries.
>
> [Id. at 64–65 (emphasis added).]

Justice O'Hern's clear explanation refutes any application of Civalier to the facts

of this case.

Here, there was nothing in the motion record demonstrating the

intersection where the accident occurred ever had an upright crosswalk sign,

and, more importantly, the record was clear that defendant never relied upon

"the previous presence of the sign" as she drove down the road in the evening of

the accident.  In the absence of any proof that Middlesex ever placed an upright crosswalk sign at this particular intersection, this case is similar to numerous other cases applying the sign immunity of N.J.S.A. 59:4-4 to defeat a plaintiff's claim of a dangerous condition of public property.  See, e.g., Weiss, 128 N.J. at 381–83 (immunity applied despite inordinate delay to municipal failure to install traffic light at dangerous railroad crossing); Kolitch v. Lindedahl, 100 N.J. 485, 497 (1985) (public entity immunized for any failure to post a sign warning of an upcoming dangerous curve in roadway); Smith v. State, Dep't of Trans., 247 N.J. Super. 62, 69 (App. Div. 1991) (recognizing in dicta no liability for failing to post a traffic sign); Aebi v. Monmouth Cty.. Highway Dep't, 148 N.J. Super. 430, 433 (App. Div. 1977) (finding N.J.S.A. 59:4-5 "clear and unambiguous" and applicable to immunize county for failing to post a sign warning of a narrow bridge).

Middlesex's decision to place signs at other intersections cannot overcome N.J.S.A. 59:4-5, which immunized Middlesex's discretionary decision not to post an above ground crosswalk sign at the intersection where defendant's car struck plaintiff.  See Kolitch, 100 N.J. at 496 ("The determination as to the advisability or necessity of a traffic sign or warning device at any particular place requires the exercise of discretion, and hence N.J.S.A. 59:4-5 simply specifies one particular type of discretionary activity to which immunity

attaches.") (quoting Aebi, 148 N.J. Super. at 433).  In the absence of other proof that the crosswalk and intersection formed a dangerous condition, as defined by N.J.S.A. 59:4-1(a), summary judgment was appropriate.

In his supplemental brief, plaintiff suggests the judge's limited, partial reopening of discovery denied him the opportunity to explore the circumstances of why this particular intersection lacked a sign, rhetorically asking "[d]id the sign ever exist?  Was it being repaired? Was it removed?"  However, the discovery end date had already passed, the case was removed from arbitration, and plaintiff's motion to extend discovery specifically requested only an opportunity to supply a rebuttal liability expert report and to possibly supply additional medical reports.  There was no mention of a need for additional factual discovery from Middlesex.

Moreover, even if further discovery would have demonstrated a sign once existed, summary judgment still would have been appropriate because no reasonable factfinder could conclude that Middlesex was aware of the need for the sign's replacement to avoid a dangerous "trap" for unwary drivers who, relying upon its absence, approached without due caution for pedestrians.  See N.J.S.A. 59:4-4 (imposing liability only for failure "to warn of a dangerous condition . . . not . . . reasonably apparent to, and would not have been anticipated by, a person exercising due care") (emphasis added); see also

11                                        A-0317-18T1

Civalier, 138 N.J. at 60–61 (recognizing reliance as key factor distinguishing pre-TCA case of Hoy v. Capelli, 48 N.J. 81 (1966), which granted public entity immunity for failing to replace traffic light leaving intersection unregulated).

Finally, in light of the above discussion, the judge's decision not to reopen discovery to permit plaintiff to serve a report to rebut Middlesex's liability expert report was not a mistaken exercise of discretion. It is unclear whether the judge actually relied upon the defense report since he only mentioned it in passing. However, there were no extraordinary circumstances justifying reopening of discovery because the report had been furnished to plaintiff months earlier.[4] Moreover, given the essentially undisputed facts we have outlined above, it is difficult to see how any expert report could have overcome the TCA's grant of immunity and staved off summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Plaintiff's original attorney became a Superior Court judge, necessitating successor counsel to take over the litigation that had already significantly progressed.