**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2414-18T4

ROBERT KOEHLER and
SUSAN KOEHLER,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

MICHAEL SMITH, ROB'S
COLLISION, DEWBERRY
ENGINEERS, INC., and
HNTB CORPORATION,

      Defendants,

and

CREAMER SANZARI, a
Joint Venture,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Argued telephonically September 16, 2020 –
      Decided October 1, 2020

      Before Judges Whipple and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4693-15.

Edward P. Capozzi argued the cause for appellant/cross-respondent (Brach Eichler, LLC, attorneys; Edward P. Capozzi, Jeremy Hylton and Kristofer Petrie, on the briefs).

Thomas M. Licata argued the cause for respondent/cross-appellant (Malapero Prisco Klauber & Licata, LLP, attorneys; Melanie Rowan Quinn, on the briefs).

PER CURIAM

In this automobile accident case, plaintiff Robert Koehler[1] appeals the Law Division's summary judgment dismissal of his personal injury complaint against defendant Creamer Sanzari, A Joint Venture. The crux of the issues raised on appeal is whether defendant – a New Jersey Department of Transportation (DOT) contractor performing ongoing work on the highway beneath an overpass that was not marked with a low clearance sign – bears liability for plaintiff's accident caused when a truck struck the overpass. Plaintiff maintains the motion judge erroneously determined defendant was entitled to traffic sign immunity under section 4-6 of the Tort Claims Act (TCA),

---

[1] In our opinion we refer to Robert Koehler as plaintiff, although we recognize Susan Koehler, his wife, also has filed a derivative claim for loss of consortium.

A-2414-18T4

N.J.S.A. 59:1-1 to 59:12-3, and defendant was not entitled to derivative immunity because it had an independent duty to address the low-clearance sign. Defendant cross-appeals, claiming the judge erroneously concluded defendant was not entitled to design plan immunity under section 4-5 of the TCA. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm the judge's order granting summary judgment to defendant. Accordingly, we need not reach the issues raised in defendant's cross-appeal.

I.

We review the trial court's grant of summary judgment de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Employing the same standard the trial court uses, ibid., we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff nonetheless entitle defendant to judgment as a matter of law, see Brill v. Guardian Life Insurance Company of America, 142 N.J. 520, 540 (1995); R. 4:46-2(c).

The facts are essentially undisputed. The accident occurred on March 12, 2014 on Route 3 in Rutherford near the Ridge Road overpass, which was located in a construction zone. Traffic was flowing normally, when the boom of a

A-2414-18T4

bucket truck – that was in tow – struck the overpass, flew off, hit the roof of plaintiff's car and entered the sunroof, causing plaintiff's accident.[2]

Pursuant to its contract with the DOT, defendant was the general contractor for a multi-year road-improvement project on Route 3, which included the Ridge Road overpass. The engineering plans and specifications for the overpass involved removing the concrete encasement from the bottom of the beams and widening the roadway beneath the overpass. The DOT hired Dewberry Engineers, Inc., and HNTB Corporation as design engineers on the project to widen the roadway, add acceleration and deceleration lanes, and perform work on seven bridges over a span of several years.[3]

The contract required an on-site traffic control coordinator, whose responsibilities included traffic control operations on the construction site for changing construction conditions, and the setup and removal of temporary

---

[2]  The tow truck was driven by Michael Smith and owned by Rob's Collision. Having settled their claims with plaintiff, both defendants were dismissed from the litigation in January 2018 and are not parties to this appeal.

[3]  Following their separate settlements with plaintiff, defendants Dewberry and HNTB were dismissed from the litigation in May 2018; they are not parties to this appeal.

A-2414-18T4

traffic signs and markers. The DOT and its engineer were responsible for deciding which lanes would close when work was performed on the project.

Built approximately forty years ago, the vertical clearance of the Ridge Road overpass was thirteen feet, nine inches. Since 1986, overpasses and bridges in New Jersey with clearances of fewer than fourteen feet, six inches are required by statute to "have the maximum clearance marked or posted thereon," N.J.S.A. 27:5G-1(a), and warning signs, indicating the maximum clearance, "posted at the last safe exit or detour preceding the bridge or overpass," N.J.S.A. 27:5G-1(b). No such marking or sign warned drivers of the low-vertical clearance for the Ridge Road overpass.

The design plan for the project, drafted by the DOT Bureau of Structural Engineering, clearly indicated a minimal vertical clearance of thirteen feet, nine inches for the Ridge Road overpass, but did not propose the placement of signage. Nor did the project involve changes to the long-standing height or clearance of the overpass. Six months before plaintiff's accident, a similar accident had occurred at the same overpass, when the boom of a fully-extended forklift, towed on a flatbed truck, struck the overpass.

When deposed, defendant's project superintendent, Sean Desmet, indicated he was unaware of the required height for the Ridge Road overpass

5

and bridge; he acknowledged there were no clearance markings on the overpass to warn drivers of the clearance. But, Desmet said he knew the maximum height of a legal truck load was thirteen feet, six inches. He stated defendant "didn't do anything other than what was detailed in [its] plans and specs," and he did not believe defendant was required to do anything to ensure vehicles did not strike the overpass. The plans only indicated the overpass clearance in one spot – the right shoulder – and that clearance was thirteen feet, nine inches. After plaintiff's accident, DOT placed clearance signage on all four lanes of the Ridge Road overpass. At that point, Desmet learned there were different clearances in various areas of the overpass.

Desmet asserted that because he was not a traffic or design engineer, he was not authorized to erect a sign himself. Nor was anyone in defendant's crew authorized to set up temporary signage. Desmet only was responsible for building what was designed, and if an engineer instructed him to place a sign on something, he would do so. Desmet testified there were no signs on any of the other bridges within the project limit.

According to plaintiff's engineering expert, Richard M. Balgowan, P.E., the design engineer is responsible for developing the temporary traffic plans based on the federal Manual on Uniform Traffic Control Devices (MUTCD).

A-2414-18T4

Balgowan acknowledged a contractor reviewing plans during the bid process would not undertake the same engineering analysis as the design engineer. Instead, the contractor only would analyze a plan for constructability; the DOT or its engineering consultant would undertake design. According to Balgowan, "the contractors, specifically [are] looking at constructability issues, things missing from the plans, things that should be added to the plans." Regarding temporary traffic plans, Balgowan stated HNTB prepared the traffic control plans and was "responsible for putting together the temporary traffic control plans, making sure that the proper signage was used, those types of things."

Balgowan acknowledged the design engineers should have addressed the low clearance of the overpass but opined that because defendant was on site daily, it should have brought the clearance issue to the engineer's attention. Balgowan nonetheless conceded the design engineer bore the primary responsibility for ensuring the plans and specifications were correct. Because the project's plans noted there was a thirteen-feet, nine-inch clearance, anyone reviewing or developing the plans for moving traffic should "do something to address the inadequate vertical underclearance."

Balgowan opined the DOT and its design engineer, who "made the entry '[thirteen] feet, nine inches' in the plans" were, therefore, aware of the Ridge

Road overpass's low clearance. Balgowan conceded that discussions regarding the vertical clearance of the bridge commenced in 2004, and the DOT decided not to install a low-clearance warning sign "for several years." Nonetheless, Balgowan asserted if a contractor were uncomfortable with the manner in which the plan was established, the contractor could address signage on its own. Referring to the issue as a "gray area," Balgowan suggested it "behooves [the contractor], the right thing to do, [is to] consult with the [r]esident [e]ngineer on the job, [and] say, 'Here's what I see, here's what I would like to do.'" Balgowan believed the contractor was authorized "to attach a sign to a bridge. That's something [it] could do. [The contractor] would absolutely talk to the State about getting approval to do so."

However, Balgowan later acknowledged: "The only thing I would question [would be whether] the contractor ha[d] the authority to put a sign directly on a bridge? And I don't know that answer." Balgowan added that he would not himself do so without seeking formal approval. Balgowan did not know whether the DOT's failure to erect a low-clearance sign, despite its awareness that the bridge was too low, was intentional or an oversight.

Balgowan also did not know whether the design engineer considered placing a warning sign at the exit before the overpass, or whether such a sign

was intentionally omitted from the temporary traffic plans. He conceded that the design engineer's plans mentioned concrete was missing from previous vehicular strikes, and a permanent low-clearance sign should have been erected well before any work on the project began. Balgowan also agreed that a low-clearance sign was not included in the plans.

At the close of discovery, summary judgment motions were cross-filed and the judge considered oral argument on January 4, 2019 before granting defendant's motion, thereby dismissing plaintiff's complaint and all crossclaims. In a cogent statement of reasons accompanying a January 9, 2019 order, the motion judge squarely addressed the parties' contentions and the legal principles raised, concluding defendant: (1) failed to demonstrate design or plan immunity applied as a matter of law under N.J.S.A. 59:4-6[4]; (2) was entitled to traffic sign immunity under N.J.S.A. 59:4-5[5]; (3) and owed plaintiff no independent duty to address the low-vertical clearance.

---

[4] N.J.S.A. 59:4-6 provides immunity "for an injury caused by the plan or design of public property . . . where such plan or design has been approved in advance of the construction" by a public entity or public employee.

[5] Under N.J.S.A. 59:4-5, "[n]either a public entity nor a public employee is liable . . . for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices."

Initially, the motion judge recognized "[a]s the general contractor for the project, [defendant wa]s entitled to derivative immunity for any immunity that would attach to the public entity." The judge also noted derivative immunity is an affirmative defense which must be proven by defendant. With those principles in view, the judge found defendant "failed to carry its burden that the inclusion or non-inclusion of low[-]clearance signs to warn traffic was considered or addressed in any fashion in the design and plans." Finding a material issue of fact therefore existed, the judge rejected defendant's argument that it was entitled to design and plan immunity.

The motion judge reached a different conclusion regarding defendant's claim of traffic sign immunity. In doing so, the judge noted the TCA's "[i]mmunity is only granted for failure to place ordinary signs." Analyzing our decisions in Smith v. State, Department of Transportation, 247 N.J. Super. 62 (App. Div. 1991), and Aebi v. Monmouth County Highway Department, 148 N.J. Super. 430 (App. Div. 1977), the judge rejected plaintiff's contention that the low clearance of the Ridge Road overpass constituted an emergency condition that would otherwise warrant an emergency warning sign under

N.J.S.A. 59:4-4.[6]   In reaching his decision, the judge dismissed plaintiff's argument that the previous bridge strike "transformed this case into one where a sudden emergency was created," thereby imposing a duty on defendant "to place temporary emergency warning signs notifying [drivers] of low clearance."

Quoting our decision in Smith, the judge instead observed:

> [I]t would be incongruous indeed to hold that there is immunity for failure to provide ordinary traffic signals under N.J.S.A. 59:4-5 but by simply labeling an ordinary, continuing and long[-]standing traffic condition "an emergency," liability may be created for failing to provide "emergency signals, signs, markings or other devices."  An "emergency" means a sudden and unexpected condition, one that is extraordinary.
>
> [247 N.J. Super. at 71-72 (citations omitted).]

Finding "[t]he vertical clearance [had remained] unchanged for many years," the judge concluded the condition "was not . . . sudden and unexpected" and as such, it did not constitute an "emergency" as defined by case law.

---

[6]  N.J.S.A. 59:4-4 imposes liability on a public entity:

> for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.

Finally, the motion judge rejected plaintiff's reliance on our Supreme Court's decision in Vanchieri v. New Jersey Sports and Exposition Authority, 104 N.J. 80 (1986), to support his argument that defendant had an independent duty to address the low-vertical clearance in light of the previous bridge strike. Instead, the judge quoted the principles espoused in Vanchieri, which underscore contractor immunity for a public entity's specifications over which the contractor has no control: "It would be fundamentally unfair to hold a contractor liable in that instance for injury caused by defective plans, at least in the absence of a blatant, obvious danger that the contractor should have brought to the attention of the public entity." Id. at 86.

Finding it was "undisputed that the DOT was aware of the vertical clearance height as well as the earlier bridge strike" and dismissing plaintiff's contention that the role of defendant's traffic control supervisor included the establishment of a temporary traffic pattern to prevent accidents at the Ridge Road overpass, the judge determined defendant owed plaintiff no independent duty. In reaching his conclusion, the judge noted the DOT had "express knowledge" of the long-standing condition, which it chose not to address. Accordingly, the condition was not a temporary hazardous condition that might otherwise require action on the part of defendant. This appeal followed.

12

On appeal, plaintiff reprises his arguments that defendant was independently negligent and not entitled to traffic sign immunity. Plaintiff now claims the judge's rejection of plan or design immunity under N.J.S.A. 59:4-6 was inconsistent with his determination that defendant was not independently negligent. We have considered plaintiff's contentions in light of our de novo review of the record and applicable legal principles, and conclude they lack sufficient merit to warrant extended discussion in this written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the sound reasons expressed by the motion judge, adding the following comments.

A.

In his first point on appeal, plaintiff claims a genuine issue of fact precluded summary judgment on defendant's independent negligence because defendant failed to retain a competing expert. Accordingly, plaintiff claimed Balgowan's opinions "were completely unchallenged evidentiarily." Those opinions included defendant's failures to: "install and enforce temporary traffic control and safety measures"; "install appropriate advance warning signs and appropriate low[-]bridge clearance signs"; "comply with the DOT's plans and specifications"; and "comply with N.J.S.A. . . . 29:5G-1." Plaintiff again asserts

13

the contract explicitly required the designation of a traffic control coordinator, who was responsible for implementing and maintaining all traffic operations on defendant's behalf. Plaintiff claims those operations included immediately identifying and correcting traffic control deficiencies and providing traffic control devices under the MUTCD.

But, plaintiff's contentions ignore Balgowan's deposition testimony, acknowledging, for example: it was the design engineer's primary responsibility to ascertain that the project's plans and specifications are correct; the issue concerning the contractor's responsibility to attach a sign to the bridge was a "gray area," thereby questioning whether the contractor was authorized to affix a low-clearance sign to the bridge; and the requisite signs should have been addressed before the project began. Further, there is no dispute that the traffic control patterns were designed by the DOT and its engineers, and defendant carried out those patterns according to the plans and specifications.

Moreover, the contract setting forth the duties of temporary traffic control relates to temporary changes in traffic patterns caused by construction; not permanent and pre-established traffic conditions, such as the overpass height at issue and the lack of signage. Although the plans provided for the removal of concrete from the bridge, the record is devoid of any evidence suggesting that

14

removal involved adjustments to the bridge's height or the overpass's clearance. Notably, the plans document the Ridge Road overpass's clearance as thirteen feet, nine inches, but do not indicate that height fails to meet the statutory requirements or is otherwise non-standard. Further, Balgowan acknowledged the milling and paving performed by defendant underneath the bridge would not have changed the clearance.

In sum, because defendant had no duty to affix signage to the Ridge Road overpass or address the traffic flow on Route 3, the judge properly granted summary judgment regardless of whether defendant enjoyed traffic sign immunity under the TCA.

B.

Nonetheless, we reject plaintiff's contention that the motion judge's interpretation of "emergency" was "limited" and inapplicable here, where the condition was long-standing. Plaintiff claims the judge failed to consider the condition was not "reasonably apparent to a careful and prudent driver." Plaintiff's argument misapprehends the judge's decision.

Generally, a public entity may be held liable for its failure to provide emergency signals when the dangerous condition is temporary. See Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 416 (1988) (stating the duty to warn

15

under N.J.S.A. 59:4-4 in the context of a snowstorm "concerns only extraordinary conditions that are qualitatively different from those conditions that would be 'reasonably apparent to' or 'anticipated by' a careful motorist driving in a snowstorm," such as a stalled snowplow in traffic or the creation of an artificial snowbank making a highway impassable); Meta v. Twp. of Cherry Hill, 152 N.J. Super. 228, 233-34 (App. Div. 1977) (finding emergency signals and signs were warranted for icy conditions when the public entity was aware of the condition several hours before the plaintiff's accident).

Emergency situations have not been found where – as the motion judge found here – under the plain meaning of "emergency," there was no indication of "a sudden or unexpected occurrence or condition" imposing a duty on the public entity, nor an emergent situation that held a high degree of risk for the public. See Spin Co. v. Maryland Cas. Co., 136 N.J. Super. 520, 523-25 (Law Div. 1975). We agree with the judge that the Ridge Road overpass's lack of clearance signage is not the type of sudden and unanticipated situation that would impose liability on a public entity, and as such, the judge correctly determined defendant was entitled to traffic sign immunity.

## C.

Lastly, plaintiff claims the motion judge's decision that defendant was not entitled to plan or design immunity – although correct – conflicts with the judge's determination that defendant was not independently negligent. Plaintiff recognizes the record was devoid of any evidence that low-clearance signs were contemplated in the plans. Plaintiff claims that because the design plans were incorporated in the contract, the judge's decisions are inconsistent.

As stated, immunity under the TCA is an affirmative defense. The motion judge determined defendant did not meet its burden to demonstrate the low-clearance sign was contemplated in the plans and a discretionary decision was made to omit signage, which would have entitled defendant to plan or design immunity. Demonstrating defendant was liable under an independent negligence theory, however, is plaintiff's burden. Again, the record does not contain any competent evidence that defendant was responsible to erect signage on the Ridge Road overpass or otherwise warn the public the bridge did not meet the statutory minimum clearance. Because both theories of liability required different burdens of proof, the motion judge's rulings were not in discord.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2414-18T4